**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelly Alice Franz,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-04114-PHX-DLR<br><br>**ORDER** |

At issue is the denial of Plaintiff Kelly Alice Franz's Application for Supplemental Security Income (SSI) by the Social Security Administration (SSA) under the Social Security Act (the Act). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15, Pl. Br.), Defendant SSA Commissioner's Opposition (Doc. 16, Def. Br.), and Plaintiff's Reply (Doc. 21, Reply). The Court has reviewed the briefs and the Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 17–36).

**I.    BACKGROUND**

On November 20, 2014, Plaintiff filed an Application for SSI, alleging a period of disability beginning on December 16, 2012. (R. at 20.) Plaintiff's claim was denied initially on April 1, 2015, and upon reconsideration on September 1, 2015. (R. at 20.) Plaintiff testified at a hearing held before the ALJ on August 9, 2017. (R. at 20.) On January 12, 2018, the ALJ denied Plaintiff's Application. (R. at 17–36.) On September 17, 2018, the

Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision final. (R. at 1–6.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: anxiety and depressive disorders, headaches, spine disorders, and fibromyalgia. (R. at 22.)

Ultimately, the ALJ concluded that Plaintiff is not disabled. (R. at 31.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ also determined that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with some limitations, including: occasional climbing of ramps and stairs; frequent stooping, kneeling, crouching, and crawling; and simple, routine, and repetitive tasks. (R. at 24.) The ALJ found that Plaintiff has no past relevant work but can perform a significant number of jobs in the national economy. (R. at 29.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises three arguments: (1) the ALJ erred by rejecting Plaintiff's symptom testimony; (2) the ALJ erred by rejecting the treating physician's opinion; and (3) the ALJ erred by not including certain limitations in Plaintiff's mental RFC calculation.[1]

---

[1] Plaintiff's first two arguments are dispositive. Therefore, the Court need not address Plaintiff's third argument.

- 3 -

### A. The ALJ erred by rejecting Plaintiff's symptom testimony without providing specific, clear and convincing reasons that are supported by substantial evidence in the record.

At her hearing, Plaintiff testified that fibromyalgia causes constant pain that requires her to lay down on average three times per day for approximately 30 minutes at a time. (R. at 41–42.) Plaintiff also testified that she can stand for 15 minutes at a time, walk for 15 to 20 minutes at a time, and sit for 15 minutes at a time. (R. at 43–44.) She can lift about 15 to 20 pounds without increasing her pain, and she has difficulty reaching, gripping, grasping, and using fine manipulation. (R. at 44–45.) She experiences migraines approximately three days per week that last six or seven hours and require her to go into a dark room. (R. at 45–46.) Plaintiff testified that she has anxiety especially when in cars, and she has difficulties with concentration and memory. (R. at 49.) Finally, Plaintiff testified that she may be able to work part-time if she only suffered from anxiety and depression, but that her fibromyalgia prevents her from working at all. (R. at 51–52.)

Plaintiff argues that the ALJ erred by failing to provide specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony. (Pl. Br. at 17–21.) The Court agrees. While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony" that are supported by substantial evidence in the record. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). "[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the ALJ may consider the lack of objective evidence along with the claimant's daily activities; the effectiveness of any treatment; the nature, frequency, and intensity of the claimant's pain; and inconsistencies in the claimant's testimony. *Id.*

1. **The ALJ did not provide sufficient reasons for rejecting Plaintiff's testimony regarding her physical impairments.**

With regard to Plaintiff's physical impairments—headaches, spine disorders, and fibromyalgia—the ALJ determined that Plaintiff's alleged limitations were inconsistent with the evidence of record because: (1) her daily activities—working during the period at issue, attending church, shopping, and doing household chores—were inconsistent with her subjective complaints; (2) her symptoms improved with treatment; and (3) the objective medical evidence does not support her alleged limitations. (R. at 25–27.) The Court finds that none of these reasons are sufficient to reject Plaintiff's testimony.

   a. **Plaintiff's daily activities were not inconsistent with her testimony regarding her alleged limitations.**

During the period at issue, Plaintiff reportedly worked at Fry's and Action Moving and Storage.[2] (R. at 25.) According to the ALJ, this reflected Plaintiff's ability "to perform at least a range of light work." (R. at 25.) Plaintiff argues that this was an insufficient basis for the ALJ to reject her testimony because the jobs were "short-lived attempts to work [that] ended because of her impairments." (Pl. Br. at 19.) The Court agrees. Although an ALJ can consider a claimant's daily activities when weighing credibility, "[i]t does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). Here, the ALJ cited to a record from October 2016 and noted that Plaintiff was working 40 hours per week. (R. at 25.) However, that record also reflects that Plaintiff was only scheduled to work 20 hours per week, and that she was suffering from headaches, vomiting, fatigue, worsening foot pain, and blisters on her foot. (R. at 626.) Moreover, at Plaintiff's next appointment on November 23, 2016, she reported that she had to quit her job after they would not accept her requested accommodations. (R.

---

[2] The ALJ found that Plaintiff's earnings from 2016 were $2,618.11 from Fry's and $920.02 from Action Moving and Storage. (R. at 22.)

at 621.) Notably, the fact that Plaintiff tried working and failed due to her impairments may actually support her alleged limitations. *Lingenfelter*, 504 F.3d at 1038. Therefore, this reason was not supported by substantial evidence.

With regard to Plaintiff's church attendance, shopping, and chores, the Court finds that the ALJ did not specify how these activities undermine Plaintiff's credibility. *See Orn*, 495 F.3d at 639 ("[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.") (quotations and citations omitted). For example, Plaintiff reported that she cleans, does laundry, and shops (R. at 186, 354, 417), but the ALJ did not determine the extent to which Plaintiff takes breaks or how long these activities take her. *Garrison*, 759 F.3d at 1016. Similarly, Plaintiff reported that she leaves her home three to five times per week, including attending church two times per week. (R. at 186–87.) However, the record does not describe the activities Plaintiff engages in while at church or how long she is there.

In sum, Plaintiff's daily activities, including her attempts to work, her church attendance, and her performance of household chores and shopping, are not inconsistent with her statements regarding her pain and limitations stemming from her physical impairments. Accordingly, the Court finds that the ALJ erred by rejecting Plaintiff's testimony based on her daily activities.

### b. Plaintiff's temporary improvement in her symptoms was an insufficient reason for rejecting her testimony.

The second reason the ALJ gave for rejecting Plaintiff's symptom testimony is that her physical impairments improved with treatment such that her symptoms were not as debilitating as she alleged at the hearing. (R. at 26.) Plaintiff argues that this was error because her improvement was short-lived. (Pl. Br. at 14.) The Court agrees.

The ALJ cited to medical records that include reports of some pain relief and improvement in Plaintiff's symptoms. (R. at 26.) However, the ALJ was required to consider this evidence of improvement in the broader context of Plaintiff's impairments.

*See Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) ("An ALJ cannot simply pick out a few isolated instances of improvement . . . but must interpret reports of improvement with an understanding of the patient's overall well-being and the nature of her symptoms.").

For example, the ALJ cited a record showing that in May 2015, Plaintiff reported that pain medication helped with her back and neck pain. (R. at 26.) However, that record also states that Plaintiff was experiencing "generalized pain to palpation with increased pain at the 18 [fibromyalgia] tenderpoints" which medication was not alleviating. (R. at 436–37.) The ALJ also noted that in June 2015, Plaintiff "reported some improvement in her overall tingling with gabapentin." (R. at 26.) However, by October 2015, Plaintiff claimed that gabapentin was not addressing her neck pain, and by November 2015, Plaintiff stopped taking gabapentin because of its side effects. (R. at 642, 750.) The ALJ found that Plaintiff reported decreased neck pain and migraines after undergoing radiofrequency ablations of the spine in 2015 and 2016. (R. at 26.) However, in August 2017, Plaintiff reported that despite greater than 80 percent improvement from the ablations, the relief wore off after one year and she continued to experience low back pain and headaches. (R. at 779.)

In sum, the Court finds that the ALJ's reliance on isolated instances of improvement was not a specific, clear and convincing reason to find Plaintiff's testimony incredible.

### c. The ALJ cannot rely solely on a lack of objective support in the record to discount Plaintiff's testimony.

The final reason the ALJ gave for finding Plaintiff less credible is that the objective medical evidence did not support Plaintiff's alleged limitations. (R. at 25–26.) An ALJ is permitted to reduce the weight given to a claimant's testimony because it is unsupported by objective medical evidence, but it cannot be the sole reason the testimony is rejected. *Burch*, 400 F.3d at 681. Because the ALJ's other reasons for rejecting Plaintiff's testimony

were neither clear nor convincing, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.[3] *Id.* at 680.

>    **2.    The ALJ's reasons for rejecting Plaintiff's testimony regarding her mental impairments were peripheral since her mental impairments were minor relative to her physical impairments.**

With regard to Plaintiff's mental impairments—anxiety and depression—the ALJ found Plaintiff incredible because: (1) the record reflects conservative mental health treatment during the period at issue; and (2) Plaintiff's daily activities, including work and church, "suggest a greater degree of functioning than alleged." (R. at 27.) However, during the hearing, Plaintiff acknowledged that her anxiety and depression were not as limiting as her fibromyalgia. (R. at 52.) Accordingly, Plaintiff's mental impairments were minor relative to her physical impairments, and it was error for the ALJ to reject Plaintiff's testimony for reasons relating to her alleged mental limitations. *See Zaldana v. Astrue*, No. CV 11-07728-RNB, 2012 WL 3307007, at *3 (C.D. Cal. Aug. 13, 2012) (finding that evidence regarding a claimant's relatively minor impairments is not a clear and convincing reason to discredit the claimant's testimony regarding her more serious impairments).

>    **B.    The ALJ erred by rejecting the opinion of Dr. Stacia Kagie, Plaintiff's treating physician.**

The ALJ assigned little weight to the opinion of Plaintiff's treating physician, Dr. Stacia Kagie, because it was not supported by the evidence of record. (R. at 27–28.) More specifically, the ALJ found that Dr. Kagie's opinion was unsupported by her own treatment notes, and that Plaintiff's reported improvement, ability to do chores, and attempts to work

---

[3] The Court notes that substantial evidence does not support the ALJ's rationale regarding the objective evidence. For example, the ALJ identified that many of Plaintiff's records are normal "except for tender points in multiple joints." (R. at 26.) Similarly, the ALJ noted that Plaintiff's pain management records show that Plaintiff had "tenderness of the spine and throughout the body on palpation but generally maintained normal gait and exhibited no lower extremity weakness." (R. at 26.) However, Plaintiff was suffering from fibromyalgia and spine disorders, which would likely cause the tenderness and pain documented throughout the record.

- 8 -

rendered Dr. Kagie's opinion unpersuasive. (R. at 28.) The Court finds that these reasons are not supported by substantial evidence.

"The medical opinion of a claimant's treating physician is given 'controlling weight' so long as 'it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the record].'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). An ALJ may only reject a treating or examining physician's contradicted medical opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

In October 2016, Dr. Kagie wrote a statement in which she noted that Plaintiff could work no more than 20 hours per week, was unable to lift or carry more than 20 pounds, and was unable to sweep and mop repetitively. (R. at 562.) In July 2017, Dr. Kagie completed a medical assessment in which she noted that Plaintiff's symptoms are chronic and would likely remain chronic. (R. at 527.) Dr. Kagie opined that due to Plaintiff's impairments, she was limited to sitting for three and a half hours in an eight-hour workday and standing or walking for a total of three and a half hours in an eight-hour workday for no more than 30 minutes at a time. (R. at 525.) Dr. Kagie also opined that Plaintiff would need to change positions regularly and would need frequent breaks to rest or lie down. (R. at 525.) Finally, Dr. Kagie opined that Plaintiff would be unable to work two consecutive days and would need to request leave from work more than six days per month. (R. at 527.)

The ALJ first found that Dr. Kagie's records from December 2014 to June 2017 were "generally unremarkable aside from the claimant looking uncomfortable at times and tenderness on palpation of the joints." (R. at 28.) The Court first notes that Dr. Kagie was treating Plaintiff for fibromyalgia, a condition that often results in chronic body pain. *See Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017). Plaintiff's reports of joint tenderness and discomfort are therefore particularly relevant to her claim. *Id.* ("Fibromyalgia is diagnosed entirely on the basis of patients' reports of pain and other symptoms, and there

are no laboratory tests to confirm the diagnosis.") (quotations and citations omitted). In addition to joint tenderness and discomfort, Dr. Kagie also repeatedly reported that Plaintiff had generalized and specific body aches and pain. (R. at 621, 636, 642, 651, 655, 668, 672, 675.) Therefore, even if Dr. Kagie's records contained some normal findings, the ALJ's dismissal of Dr. Kagie's opinion was not supported by substantial evidence. *Revels*, 874 F.3d at 663 (finding that a person with fibromyalgia may have normal muscle strength, reflexes, and sensory functions).

The ALJ also discounted Dr. Kagie's opinion because Plaintiff's symptoms improved with treatment. (R. at 28.) Specifically, the ALJ noted that Plaintiff "reported improvement with ablation and improvement or decrease in migraines." (R. at 28.) As discussed above, though a claimant's improvement could be a legitimate reason for discounting a physician's opinion, the recorded improvement in this case is not substantial evidence to support the ALJ's finding. Dr. Kagie's own treatment records reflect that Plaintiff continued to suffer from headaches and neck and back pain from 2015 to 2017, and the relief she experienced from ablations did not last. (R. at 612, 615, 621, 636, 647, 651, 655.)

Finally, the ALJ reasoned that Dr. Kagie's opinion was inconsistent with Plaintiff's daily activities, including attempting to work and doing chores independently. (R. at 28.) However, as with Plaintiff's symptom testimony, the ALJ failed to provide information about the exertional requirements, frequency, or duration of Plaintiff's daily activities and how they undermine her alleged limitations. Accordingly, the ALJ's rationale is not sufficiently specific or supported.

In sum, the Court finds that the ALJ erred in discounting Dr. Kagie's opinion because his stated reasons were neither specific nor legitimate.

**C.  The proper remedy is to remand for computation of benefits.**

The final issue is whether the Court should remand Plaintiff's case for computation of benefits. Plaintiff asks that the Court apply the credit-as-true rule, which would result in

a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 24–25.)

The credit-as-true rule applies if each part of a three-part test is satisfied. *Treichler*, 775 F.3d at 1099–1102. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence or testimony. *Id.* at 1100–01. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even if these requirements are met, "the Court still retains the flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Guillen v. Colvin*, No. CV 13-0817-RNB, 2014 WL 4656422, at *10 (C.D. Cal. Sept. 17, 2014) (citing *Garrison*, 759 F.3d at 1020–21).

Here, each of the elements of the credit-as-true rule are met. First, the ALJ provided insufficient reasons for rejecting Plaintiff's symptom testimony and Dr. Kagie's opinion. Next, the record is fully developed and remand for additional proceedings would serve no useful purpose. Finally, if Plaintiff's symptom testimony and Dr. Kagie's opinion were credited as true, the ALJ would be required to find Plaintiff disabled. The vocational expert at Plaintiff's hearing testified that Plaintiff would be unable to work if she was limited to standing, walking, and sitting for 15 minutes; lifting 15 pounds; and gripping, grasping, reaching, and using fine manipulation occasionally. (R. at 58.) Plaintiff testified that she can stand for 15 minutes at a time, walk for 15 to 20 minutes at a time, and sit for 15 minutes at a time; she can lift 15 to 20 pounds without increasing her pain; and she has difficulty reaching, gripping, grasping, and using fine manipulation. (R. at 44–45.) The vocational expert also testified that Plaintiff would be unable to work if she missed work two or more days per month. (R. at 57.) Dr. Kagie's 2016 statement and 2017 medical

assessment establish that Plaintiff would be unable to work more than 20 hours per week, would be unable to work two consecutive days, and would need to request leave from work more than six days per month. (R. at 527.)

Finally, there is not serious doubt as to whether Plaintiff is, in fact, disabled. Her physical impairments and resulting pain are well-documented throughout the records, which the ALJ noted. (R. at 26–28.) Furthermore, although the record does not confirm beyond all doubt that Plaintiff's impairments prevent her from working, it does not create a serious doubt that she is disabled. *Garrison*, 759 F.3d at 1023.

Accordingly, the Court will remand this case for computation and entry of benefits.

**IT IS THEREFORE ORDERED** reversing the January 1, 2018 decision of the Administrative Law Judge (R. at 17–36).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close the case.

Dated this 6th day of February, 2020.

Douglas L. Rayes
United States District Judge